THE STATE OF OHIO, APPELLEE, *v.*
THE BUDD COMPANY, APPELLANT.

[Cite as State v. Budd Co. (1980), 67 Ohio App. 2d 23.]

(No. WD-79-9—Decided January 4, 1980.)

*Mr. Warren J. Lotz,* for appellee.

*Messrs. Marshall, Melhorn, Cole, Hummer & Spitzer* and *Mr. Richard M. Kerger,* for appellant.

POTTER, P. J.   The defendant-appellant, The Budd Company, was found guilty of polluting state water in violation of R. C. 1531.29 and fined $150. The Budd Company then perfected this appeal from the judgment of the Bowling Green Municipal Court. Its assignments of error challenge the trial court's construction of R. C. 1531.29. We are asked to determine whether R. C. 1531.29 proscribes the act involved.

On March 26, 1978, a state game protector received a complaint that oil was flowing into Rocky Ford Creek. The game protector investigated and determined that the oil came from appellant's property. The evidence adduced at trial showed that 15,000 gallons of oil had been delivered to the appellant on March 23, 1978. The delivery man pumped the oil into two tanks on appellant's property through a temporary fill line, which was made of plastic and was 75 to 80 feet in length. When making deliveries, a line on the delivery truck was attached to one end of the temporary fill line. The other end of the temporary fill line made a ninety-degree elbow and was slipped into the top of the tank to be filled.

The temporary fill line was moved from the north tank to the south tank as the tanks were filled so that a 15 to 20-foot segment of the line was periodically moved. Several tankers had made deliveries to the appellant that week and the preceding week. The maintenance man on duty when the last delivery was made testified that he usually walked along the temporary fill line every time the line was moved or a tanker came in to check for leaks in the seven or eight unions in the line; but, he could not remember if he did so when the last delivery was made, *i.e.,* the delivery preceding the discovery of the pollution. He did remember that the last 15 feet of the line was in an extremely muddy area due to recent construction. He testified that after the tanker left, he waded out to the tanks to cap them, and he noticed an oil slick. He did not report it because he did not believe that is was important.

The game protector testified that oil from one inch to several inches thick had pooled in two areas ranging from 100 to 200 square feet on the appellant's property. He observed a fine film of oil flowing across a road bounding appellant's prop-

erty. The oil and water went into a catch basin and later reappeared flowing from a pipe into a ditch. The water from the ditch flows into Rocky Ford Creek. The court found that the defendant was guilty as charged.

For its first assignment of error appellant claims:

"That the Court erred in finding that the appellant placed or disposed of oil on state land, in a waterway or on the bank of a waterway within the meaning of Ohio Revised Code §1531.29."

By this assignment of error appellant argues that the facts do not show that it placed oil "in" the ditch, emphasizing the term "in" as it appears at one point in R. C. 1531.29 (see R. C. 1531.29 as quoted, *infra*, with the "in" at issue, italicized). Appellant argues that the phrase "in any ditch" qualifies and limits the phrase "place or dispose of in any manner."

R. C. 1531.29[2] provides:

"No person shall place or dispose of in any manner, any garbage, waste, peelings of vegetables or fruits, rubbish, ashes, cans, bottles, wire, paper, cartons, boxes, parts of automobiles, wagons, furniture, glass, oil, or anything else of an unsightly or unsanitary nature on any state owned, controlled, or administered land, or *in* any ditch, stream, river, lake, pond, or other watercourse, except those waters which do not combine or effect a junction with natural surface or underground waters, or upon the bank thereof where the same is liable to be washed into the water either by ordinary flow or floods. This section does not apply to any substance placed under authority of a permit issued under section 6111.04 of the Revised Code or exempted by such section from its terms." (Emphasis added.)

Needless to say, "in" is not a legal or technical term of art. It is employed in common parlance to denote any number of concepts. Generally, it connotes location "***in space or in some materially bounded object***." Webster's Third New International Dictionary (1976). The term does not describe the method by which an object is transferred from one location to another. Appellant's argument that "in" requires that the

---

[2] R. C. 1531.29 supersedes R. C. 3767.32. R. C. 3767.20 contains terms similar to those contained in R. C. 1531.29. R. C. 6111.04 prohibits water pollution by placing or causing to be placed "*** sewage, industrial waste, or other wastes in a location where they cause pollution***."

oil be placed directly from hand to ditch and precludes application of the statute when the oil flows in a less linear route is not supported by common usage of the term, and appellant offers no case law to support its theory. Appellant's first assignment of error is without merit.

Appellant's second assignment of error states:

"That the Court erred in finding that the oil located in Rocky Ford Creek was placed or disposed of therein by the appellant within the meaning of Ohio Revised Code §1531.29."

Appellant argues that the state did not prove "who put the oil on The Budd Company property and that fact must be established beyond a reasonable doubt." Appellant argues liability should be imposed upon the oil delivery company.

A violation of R. C. 1531.29 constitutes a misdemeanor. R. C. 1531.99(B). Because it is a criminal offense, the state must prove each element delineated by the legislature in R. C. 1531.29 beyond a reasonable doubt. 15 Ohio Jurisprudence 2d Rev. 260, Criminal Law, Section 2. The state had to show that the appellant "***place[d] or dispose[d] of in any manner***oil***in any ditch***." The statute does not require and the state was not required to prove the negative—that other parties near the scene of the crime did not commit the offense charged. Appellant's second assignment of error is without merit.

For its third assignment of error appellant states:

"That the Court erred in imposing strict liability upon the appellant under the provisions of Ohio Revised Code §1531.29."

Appellant argues that the state must prove appellant intentionally violated R. C. 1531.29. Appellant argues intent is required because it is impossible to unintentionally place or dispose of anything.

The trial court held that the offense charged was a malum prohibitum offense so that intent did not have to be shown. In the alternative, the trial court found that there was sufficient proof that the appellant, through its employee, acted recklessly.

We agree with the trial court's finding that R. C. 1531.29 does not require that the state show intent.

R. C. 1531.29 does not specify a *mens rea,* the guilty state of mind. R. C. 2901.21(B) provides:

"When the section defining an offense does not specify

any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

In order to determine whether R. C. 1531.29 plainly indicates a purpose to impose strict criminal liability, we examine its statutory language and consider the legislature's intent as it is revealed by the statutory language. Our inquiry is aided by considering whether the offense is malum prohibitum or malum in se; whether the injury will probably occur regardless of the state of mind accompanying the outlawed act; whether the statutory purpose will be undermined if a guilty state of mind is required; and whether the particular defendant could have prevented the injury from occurring by exercising due care. 21 American Jurisprudence 2d 171, Criminal Law, Section 91. In view of the factors set forth above, the trial judge's holding that the state was not obligated to prove intent was not error. *State* v. *Gastown* (1975), 49 Ohio Misc. 29. R. C. 1531.29 does not set forth any guilty mind requirement. The injury to be guarded against, the destruction of wildlife through pollution, will occur whether the waterways are intentionally or accidentally polluted. The oil seepage originated on appellant's property. Appellant was aware of the initial seepage through its employee and could have taken steps to absorb the oil; however, appellant failed to do so. See *State* v. *Hafle* (1977), 52 Ohio App. 2d 9, 14. As the trial court noted, there was also sufficient evidence to show that appellant acted in a reckless manner. See R. C. 2901.21(B) and 2901.22(C).

We have rejected, *supra,* appellant's argument that it did not place the oil "in" the ditch. Analyzing the statute as a whole, we conclude that appellant's act fell within the category of acts outlawed by the statute. The terms "place" or "dispose of" suggest that the substance be put into a particular position, directed accurately to a previously determined area, or distributed in a systematic manner. Webster's Third New International Dictionary (1976). Thus, the terms do suggest that a hand-to-ditch distribution of the oil is required by the

statute. However, the legislature has chosen to qualify these terms with the phrase "in any manner." The legislature must have intended that this phrase signify just what it means in common usage. "In any manner" suggests that it does not matter whether the oil was placed pursuant to a predetermined plan or whether the oil made its way into the ditch inadvertently. We, therefore, find appellant's arguments unavailing. See Annotation 32 A.L.R. 3d 215, 271, Section 14. Appellant's third assignment of error is without merit.

For its fourth assignment of error appellant states:

"That the Court erred in finding that the appellant was not excused from liability because of an Act of God."

Without deciding whether an act of God is available as a defense in criminal cases, we find that the record does not contain sufficient proof that the rainfall was an "***extraordinary, unexpected, and irresistible manifestation of forces of nature.***" 1 Ohio Jurisprudence 2d 369, Act of God, Section 2. See, also, 1 American Jurisprudence 2d 676, Act of God, Section 2. Appellant's fourth assignment of error is without merit.

For its fifth and final assignment of error appellant claims:

"That the Court erred in finding that the facts establish that the appellant had violated Ohio Revised Code §1531.29."

A review of the record shows that there was sufficient evidence to sustain the fact finder's conclusion that all the elements of the offense were established beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169.

On consideration thereof, the court finds that the appellant was not prejudiced or prevented from having a fair trial. The judgment of the Bowling Green Municipal Court is affirmed.

*Judgment affirmed.*

BROWN and CONNORS, JJ., concur.